**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| NEXTPOINT, INC., | ) | FILED: AUGUST 13, 2008 |
|  | ) | 08CV4593 |
| Plaintiff, | ) | JUDGE MANNING |
|  | ) | MAGISTRATE JUDGE VALDEZ |
| v. | ) | Case No.   PH |
|  | ) |  |
| NEXTPOINT NETWORKS, INC., | ) | JURY DEMANDED |
|  | ) |  |
| Defendant. | ) |  |

### COMPLAINT FOR INJUNCTION AND OTHER RELIEF

Plaintiff Nextpoint, Inc., by its attorneys Novack and Macey LLP, as and for its Complaint For Injunction And Other Relief against Defendant Nextpoint Networks, Inc., alleges as follows:

### Nature Of Action

1.    Since January 2006, Plaintiff has been providing litigation support and consulting services to a nationwide client base under the trade name and trademark "Nextpoint." Throughout that time, Plaintiff also has been using a logo/design version of the "Nextpoint" trademark. Defendant Nextpoint Networks, Inc. was formed in January 2008 and immediately, without permission from Plaintiff, began doing business as "Nextpoint" and using a "Nextpoint" design mark that is nearly identical to Plaintiff's mark. Defendant's infringing conduct is causing confusion in the marketplace and is diluting Plaintiff's goodwill and reputation. This is an action for trademark infringement, dilution and unfair competition to enjoin Defendant's unlawful conduct, and to recover damages caused thereby.

## Parties, Jurisdiction And Venue

2.      Plaintiff Nextpoint, Inc. is an Illinois corporation with its principal place of business in Cook County, Illinois.  It has offices in Illinois, Wisconsin and California.  Plaintiff provides computer software- and Internet-based litigation support and consulting services.

3.      Defendant Nextpoint Networks, Inc. is a Delaware corporation with its principal place of business in Maryland.  It has offices in Maryland, Massachusetts and Florida.  Defendant was formed on or about January 22, 2008, and provides computer hardware and software to enable the interconnection of wireless and mobile devices to networks, and related services.

4.      Plaintiff's and Defendant's products and services are sold in and affect interstate commerce.

5.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 15 U.S.C. §1121 (action arising under the Lanham Act), 28 U.S.C. §1331 (federal question), 28 U.S.C. §1338(a) (any action of Congress relating to trademarks) and 28 U.S.C. §1338(b) (action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws).  This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 (supplemental jurisdiction).

6.      Venue is proper in this district under 28 U.S.C. §1391, because a substantial part of the events giving rise to the actions complained of herein occurred in this District, and Plaintiff is being injured in this District.

## Plaintiff's Business

7.      Plaintiff develops and deploys proprietary software that allows corporations and law firms to manage electronic evidence, including vast amounts of documents, depositions, videos, transcripts and demonstrative exhibits.  Plaintiff loads its clients' litigation discovery materials into

databases and provides access to the databases via Internet and proprietary software that enables clients to search, organize and manage the information. Plaintiff provides these services in all phases of litigation, including on site and courtroom service.

8.　　Plaintiff's clients come from all over the United States. Notable clients include ExxonMobil Corporation, Verizon Wireless, McDermott Will & Emery, and Winston & Strawn. Plaintiff's service has been used regularly across the country, including Chicago, Illinois; Denver, Colorado; Baton Rouge, Louisiana; San Diego, California; San Jose, California; San Francisco, California; Seattle, Washington; Boston, Massachusetts; Islip, New York; Wilmington, Delaware; Alexandria, Virginia; and Palm Beach, Florida.

### The "Nextpoint Marks"

9.　　At issue in this case are a standard character version and a design version of the "Nextpoint" trademark, both of which Plaintiff owns and has used in commerce to promote its business and services.

10.　　Since January 2006, Plaintiff has done business exclusively under the "Nextpoint" trade name and has used the standard character trademark "Nextpoint" (the "Standard Character Mark") to identify its products and services and distinguish them from competitors' products and services.

11.　　Since January 2006, Plaintiff also has used a stylized version of the mark, which features three ellipses over the word "nextPoint" (the "Design Mark"), to identify its products and services and distinguish them from competitors' products and services. The Design Mark was modified slightly in or around December 2007 to reduce the size of the ellipses and change the "P" to a lower case character. By design, the modification preserved the look and feel of the original

version of the Design Mark and, thus, preserved the goodwill associated therewith. The Design Mark, in both its original and modified forms, is depicted on Exhibit A hereto.

12.     Plaintiff has invested significant resources in nationally promoting its products and services using the Standard Character Mark and the Design Mark (collectively, the "Nextpoint Marks").

13.     Plaintiff's products and services have been referenced and promoted on the Internet and in various print publications including the Chicago Tribune website, Law.com and Lawyers USA.

14.     Plaintiff repeatedly features the Nextpoint Marks on its website at www.nextpoint.com.

15.     Plaintiff has used and continues to use the Nextpoint Marks in the following materials and media, among others:

- Paid placements through Internet search engines;
- Internet "blog" postings;
- Plaintiff's website, www.nextpoint.com;
- Electronic mail "blasts" to business contacts;
- Employee business cards;
- Business letterhead;
- Signage at its offices in Chicago, Los Angeles and Madison, Wisconsin;
- Hard copy advertising materials such as brochures;
- Promotional materials to business contacts;
- Invoices to existing clients;
- Electronic mail return address blocks; and
- Employee carrying cases/bags which are used for client visits and courtroom work.

16.     The Nextpoint Marks are inherently distinctive, and have acquired added distinctiveness through Plaintiff's continuous and substantial use of the marks in commerce to identify and promote its business and services.

17.     Plaintiff has established goodwill in connection with its business, which goodwill the public associates with the Nextpoint Marks.

18.     On December 30, 2005, Plaintiff applied to the United States Patent & Trademark Office ("USPTO") for registration of the Standard Character Mark on the principal register. On July 3, 2007, the USPTO issued a Notice of Allowance for the Standard Character Mark application.

19.     On February 14, 2006, Plaintiff applied to the USPTO for registration of the Design Mark on the principal register. On July 3, 2007, the USPTO issued a Notice of Allowance for the Design Mark application.

20.     Because Plaintiff has received Notices of Allowance for both the Standard Character Mark and Design Mark, the only additional step Plaintiff must complete to obtain certificates of registration for both marks on the principal register is to submit proof of actual use to the USPTO. Plaintiff is in the process of doing this.

### Defendant's Infringement

21.     According to Defendant's website, which is located at www.nextpointnetworks.com, it is in the business of providing "access and interconnect solutions for applications that are fixed, mobile or converged. In addition to delivery of secure fixed and mobile voice, data and multimedia sessions over a flexible and scalable platform, Nextpoint's solution suites enable operators to evolve their networks to encompass services that deliver greater ARPU to consumers and enterprises."

22.     As of the filing of this complaint, Defendant's website contains various descriptions of its business that are vague and confusing, particularly when compared to the goods and services offered by Plaintiff.

23.     Defendant was formed on or about January 22, 2008.  By that date, Defendant was doing business under the trade name "Nextpoint," without Plaintiff's permission, despite Plaintiff's presence in the marketplace and pending application for registration of the Nextpoint Marks.

24.     At or about that time -- and, again, without Plaintiff's permission -- Defendant began using, in commerce, a stylized trademark that is confusingly similar to Plaintiff's Design Mark.  A copy of the mark Defendant is using is depicted on Exhibit B hereto.  Defendant's "Nextpoint" trade name and stylized mark are collectively referred to hereafter as the "Infringing Marks."

25.     Defendant's website features the Infringing Marks.

26.     Defendant chose and is using "nextpoint" as the first metatag for its website.  As a result, when Internet users input "nextpoint" into a search engine, such as Google, they are directed to Defendant's website, not Plaintiff's.  This directly undermines a central component of Plaintiff's marketing efforts, which is to maximize "hits" for Plaintiff's website on Internet search engines.

27.     On October 23, 2007, Defendant filed U.S. Trademark Application Serial No. 77/310,770 for the standard character mark "Nextpoint."  Plaintiff is opposing that application.

28.     Defendant's use of the Infringing Marks in commerce, as described herein, began after Plaintiff's use of its Nextpoint Marks.

29.     Defendant's use of the Infringing Marks in commerce, as described herein, is likely to cause, and has already caused, confusion among consumers as to the source of Defendant's products or services, and as to whether Plaintiff and Defendant are affiliated.

30.     Plaintiff has received telephone calls from confused individuals attempting to reach Defendant.  Plaintiff has received mailings meant for Defendant.  Plaintiff interviewed a job applicant who expressed confusion as to whether the Plaintiff's website or Defendant's website was Plaintiff's website.

31.     During the time Defendant has been using the Infringing Mark, Defendant was on notice of the goodwill symbolized by, and the fame of, Plaintiff's Nextpoint Marks and of the well-established association of the Nextpoint Marks with Plaintiff's business and services.

32.     Defendant's actions have been willful and intentional and are intended to trade on the reputation and goodwill of Plaintiff, to confuse and deceive consumers and to unfairly compete with Plaintiff.

33.     On January 9, 2008, after Defendant's first use of the Infringing Marks, but before the filing of this Complaint, Plaintiff sent Defendant a "cease and desist" letter advising Defendant that its use of the Infringing Marks was unauthorized and unlawful, and demanding that Defendant cease all commercial use of the Infringing Marks.  Defendant has refused Plaintiff's demand and has continued its unauthorized and unlawful use of the Infringing Marks.

## COUNT I

### Unfair Competition In Violation Of
### Section 43(a) Of The Lanham Act, 15 U.S.C. §1125(a)

34.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 above, as though fully set forth herein.

35.     Plaintiff's Nextpoint Marks are valid, protectible trademarks.

36.    Defendant's use of the Infringing Marks, as described herein, is likely to cause confusion, deception or misunderstanding among consumers as to the source, sponsorship, approval or certification of Defendant's products and services, and give rise to the incorrect belief that Defendant has some connection or affiliation with Plaintiff.

37.    As a direct and proximate result of Defendant's wrongful conduct, Defendant's have caused Plaintiff irreparable harm and injury.

38.    Injury to Plaintiff is continuing and will continue unless Defendant's actions are restrained by the Court. Unless Defendant is enjoined from engaging in their wrongful conduct, Plaintiff will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

## COUNT II

### Trademark Dilution In Violation Of
### Section 43(c) Of The Lanham Act, 15 U.S.C. §1125(c)

39.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 above, as though fully set forth herein.

40.    Plaintiff's Nextpoint Marks are distinctive and famous, and were so prior to Defendant's commencing its unauthorized use of the Infringing Marks described herein.

41.    Defendant's use of the Infringing Marks, as described herein, is diluting the quality of Plaintiff's Nextpoint Marks by diminishing the capacity of the Nextpoint Marks to identify and distinguish Plaintiff's business and services.

42.    Defendant has willfully attempted to dilute the distinctive quality of Plaintiff's Nextpoint Marks and to trade on the goodwill and reputation of Plaintiff.

43.    As a direct and proximate result of Defendant's wrongful conduct, Defendant has caused Plaintiff irreparable harm and injury.

44.    Injury to Plaintiff is continuing and will continue unless Defendant's actions are restrained by the Court.  Unless Defendant is enjoined from engaging in its wrongful conduct, Plaintiff will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

## COUNT III

### "Cybersquatting" In Violation Of
### Section 43(c) Of The Lanham Act, 15 U.S.C. §1125(d)

45.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 above, as though fully set forth herein.

46.    Defendant has registered, trafficked in or used the domain name "nextpointnetworks.com."

47.    Defendant has a bad faith intent to profit from Plaintiff's name and Standard Character Mark.

48.    Defendant's use of the domain name was and is commercial and in commerce.

49.    At the time Defendant registered the domain name "nextpointnetworks.com", Plaintiff's Nextpoint Marks were distinctive, and the domain name "nextpointnetworks.com" was confusingly similar to the Nextpoint Marks.

50.    At the time Defendant registered the domain name "nextpointnetworks.com", Plaintiff's Nextpoint Marks were famous, and the domain name "nextpointnetworks.com" was confusingly similar to, or dilutive of, the Nextpoint Marks.

51.    As a direct and proximate result of Defendant's wrongful conduct, Defendant has caused Plaintiff irreparable harm and injury.

52.    Injury to Plaintiff is continuing and will continue unless Defendant's actions are restrained by the Court.  Unless Defendant is enjoined from engaging in its wrongful conduct, Plaintiff will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

**COUNT IV**

**Violation Of Illinois Anti-Dilution Act, 765 ILCS 1036/65**

53.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 above, as though fully set forth herein.

54.    Plaintiff's Nextpoint Marks are distinctive and famous.

55.    Defendant's Infringing Marks are similar or identical to the Nextpoint Marks.

56.    Defendant's use of the Infringing Marks began after Plaintiff's Nextpoint Marks became famous.

57.    Defendant's use of the Infringing Marks is causing injury to Plaintiff's business reputation and diluting the distinctive quality of Plaintiff's famous Nextpoint Marks.

58.    Defendant's conduct was committed with knowledge that the Infringing Marks were intended to be used to cause confusion.

59.    As a direct and proximate result of Defendant's wrongful and willful conduct, Defendant has caused Plaintiff irreparable harm and injury.

60.    Injury to Plaintiff is continuing and will continue unless Defendant's actions are restrained by the Court.  Unless Defendant is enjoined from engaging in its wrongful conduct, Plaintiff will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

## COUNT V

### Violation Of Illinois Uniform
### Deceptive Trade Practices Act, 815 ILCS 510/2

61.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 above, as though fully set forth herein.

62.     Defendant's use of the Infringing Marks, as described herein, is likely to cause confusion, deception or misunderstanding among consumers as to the source, sponsorship, approval or certification of Defendant's products and services, and give rise to the incorrect belief that Defendant has some connection or affiliation with Plaintiff.

63.     Defendant has willfully engaged in the foregoing deceptive trade practice.

64.     Defendant's actions have caused and continue to cause injury and damages to Plaintiff.

65.     As a direct and proximate result of Defendant's wrongful conduct, Defendant has caused Plaintiff irreparable harm and injury.

66.     Injury to Plaintiff is continuing and will continue unless Defendant's actions are restrained by the Court.  Unless Defendant is enjoined from engaging in its wrongful conduct, Plaintiff will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

## COUNT VI

### Violation Of Illinois Consumer Fraud
### And Deceptive Business Practices Act, 815 ILCS 505/2

67.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 above, as though fully set forth herein.

-11-

68.    Defendant's use of the Infringing Marks, as described above, is likely to cause a public injury and a detrimental effect on consumers by causing confusion, deception or misunderstanding as to the source, sponsorship, approval or certification of Defendant's products and services, and by giving rise to the incorrect belief that Defendant has some connection or affiliation with Plaintiff.

69.    Defendant's conduct implicates consumer protection concerns because it concerns trade practices directed at the market generally.

70.    Defendant's misconduct was performed with malice or reckless indifference to the rights of Plaintiff.

71.    Defendant's conduct has caused and continues to cause injury and damages to Plaintiff.

72.    As a direct and proximate result of Defendant's wrongful conduct, Defendant has caused Plaintiff irreparable harm and injury.

73.    Injury to Plaintiff is continuing and will continue unless Defendant's actions are restrained by the Court.  Unless Defendant is enjoined from engaging in its wrongful conduct, Plaintiff will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

## COUNT VII

### Illinois Common Law Unfair
### Competition And Trademark Infringement

74.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 above, as though fully set forth herein.

75.    Defendant's use of the Infringing Marks, as described above, constitutes common law unfair competition and trademark infringement because such use is likely to cause confusion, deception or misunderstanding among consumers as to the source, sponsorship, approval or certification of Defendant's products and services, and give rise to the incorrect belief that Defendant has some connection or affiliation with Plaintiff.

76.    As a direct and proximate result of Defendant's wrongful conduct, Defendant has caused Plaintiff irreparable harm and injury.

77.    Injury to Plaintiff is continuing and will continue unless Defendant's actions are restrained by the Court.  Unless Defendant is enjoined from engaging in its wrongful conduct, Plaintiff will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

WHEREFORE, Plaintiff requests that this Court grant the following relief:

A.    A preliminary and permanent injunction enjoining Defendant, its employees, agents, officers, owners, directors, attorneys, representatives, successors, affiliates, branches, subsidiaries, successors and assigns, and all those in concert or participation with any of them from imitating, copying, advertising, promoting, registering, using, reproducing or displaying in any manner whatsoever in United States commerce:

1.    the name "Nextpoint" and/or the Nextpoint Marks and any other name or mark which colorably imitates or is confusingly similar to said name or mark, or that contributes to said colorable imitation or confusing similarity, alone or in combination with any other name(s), mark(s), term(s), word(s), logo(s), symbol(s), device(s), designation(s), and/or design(s) on or in connection with any product or service;

-13-

    2.    any other description or representation or any other thing calculated or likely to cause or contribute to dilution of the distinctive qualities of Plaintiff's Nextpoint Marks; and

    3.    any other designation, description or representation or any other thing calculated or likely to cause or contribute to confusion or mistake or to deceive or contribute to deception of the public into the belief that Defendant or its products or services are approved by or connected or related in any way to Plaintiff.

B.    An order directing Defendant to immediately abandon with prejudice U.S. Trademark Application Serial No. 77/310,770 for the mark "Nextpoint" and any other trademark applications or registrations for "Nextpoint" alone or in combination with any other name(s), mark(s), term(s), word(s), logo(s), symbol(s), device(s), designation(s) and/or design(s), that it owns.

C.    An order requiring Defendants, pursuant to 15 U.S.C. §1118 to deliver up to the Court or to Plaintiff for destruction all labels, packages, brochures, wrappers advertisements, promotions, letterhead and all other matter in the custody or under the control of Defendant bearing the Infringing Mark or any other designation likely to cause confusion with Plaintiff or Plaintiff's Nextpoint Marks.

D.    An order requiring Defendant to publicly acknowledge that its goods and services offered under the "Nextpoint" name and Infringing Mark are not sponsored or endorsed by Plaintiff and that Plaintiff is not in any way associated with Defendant.

E.    An order awarding monetary relief to Plaintiff in an amount to be fixed by the Court in its discretion as just, including: all profits received by Defendant as a result of its unlawful actions, said amount to be trebled, pursuant to 15 U.S.C. §1117; all damages sustained by Plaintiff as a result of Defendant's unlawful actions, said amount to be trebled, pursuant to 15 U.S.C. §1117; punitive damages under 815 ILCS 505/10a and Illinois common law; and prejudgment interest.

-14-

F.    An order requiring Defendants, pursuant to 15 U.S.C. §1116, to file with the Court and serve upon Plaintiff within thirty (30) days after issuance of an injunction a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

G.    An award in favor of Plaintiff of all reasonable attorneys' fees, costs and disbursements incurred by Plaintiff as a result of this action as provided by 15 U.S.C. §1117 and the laws of Illinois.

H.    Any such other and further relief as the Court deems appropriate.

Plaintiff demands a trial by jury on all issues so triable.

NEXTPOINT, INC.

By: /s/ Richard L. Miller II
One of Its Attorneys

Eric N. Macey
Richard L. Miller II
John F. Shonkwiler
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Doc. # 232645

-15-

08CV4593
JUDGE MANNING
MAGISTRATE JUDGE VALDEZ

PH

# EXHIBIT A



08CV4593
JUDGE MANNING
MAGISTRATE JUDGE VALDEZ

PH

# EXHIBIT B

